UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VIOLET-MARIA R.,[1]

                            Plaintiff,                          DECISION AND ORDER

-vs-                                                            1:19-CV-0999 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

_____

## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Apr. 10, 2020, ECF No. 14; Def.'s Mot., Jul. 9, 2020, ECF No. 17. Plaintiff argues that the Commissioner's denial of her application for DIB and SSI benefits should be reversed and remanded for further proceedings because the ALJ's finding with respect to Plaintiff's residual functional capacity was based on legal error, and was unsupported by substantial evidence. The Commissioner disputes Plaintiff's contentions. For the reasons set

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 14] is denied, the Commissioner's motion [ECF No. 17] is granted, and the Clerk of Court is instructed to close the case.

LEGAL STANDARD

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff filed her DIB and SSI applications on May 5, 2016, alleging an onset date of September 1, 2013. Transcript ("Tr."), 213–27, Oct. 28, 2019, ECF No. 6. In her applications, Plaintiff alleged that her ability to work was limited by hip issues, back problems, knee problems, chronic pain, and an inability to sit, stand, or walk for extended periods. Tr. 259. On July 20, 2016, the Commissioner determined that Plaintiff was not disabled, and that she did not qualify for either DIB or SSI benefits. Tr. 109–23. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 125.

Plaintiff's request was approved, and the hearing was held in Buffalo, New York, with the Plaintiff appearing with her counsel, and an impartial vocational expert also joining by phone. Tr. 34. The ALJ asked Plaintiff's counsel what alleged impairments cause Plaintiff to be disabled, and counsel responded:

3

> Those do include right hip degenerative joint disease, status post[] hip
> replacement, left hip pain, status post pending surgery – it's remote, but
> something that has been noted in imaging that has been done in recent
> years and it does cause her continued pain, increasing pain as well –
> scoliosis and osteoarthritis of the left knee.

Tr. 36. Counsel stated that all of the alleged impairments are severe, and acknowledged that they do not – individually or combined – meet or medically equal a listing. Tr. 37.

Upon examination by the ALJ and by her attorney, Plaintiff testified that she still experiences sharp shooting pain in her right and left hip (Tr. 40, 50); that her left knee gets swollen after 15 minutes of walking, forcing her to lie down (Tr. 42–43); and that her scoliosis causes her to lose sleep, and limits her standing to five minutes before her back starts hurting (Tr. 44–45). However, Plaintiff also testified that she is "pretty much good" when it comes to such personal care tasks as dressing, showering, and putting on shoes (Tr. 46); does the household chores, but takes breaks (Tr. 46); does the dishes and laundry (Tr. 47); usually shovels the snow on the walk to her apartment, if needed (Tr. 47); does the grocery shopping, though sometimes uses "the old lady wheelchairs" (Tr. 47–48); drives herself to local destinations, but not long trips (Tr. 48–49); takes her eight year-old daughter places three or four times a week (Tr. 49); attends school functions for her daughter (Tr. 52); cooks for herself and her daughter (Tr. 52–53); and lifts one end of her couch approximately once a week in order to sweep underneath (Tr. 53).

In her decision on September 19, 2018 denying DIB and SSI benefits to Plaintiff, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through December 31, 2015. Tr. 18. At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2013, the alleged onset date. Tr. 18. At step two, the ALJ determined that Plaintiff has several severe impairments: osteoarthritis of the bilateral hips, status post right total hip arthroplasty, degenerative joint disease and osteoarthritis of the left knee, scoliosis, and obesity. Tr. 18. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[2] ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following exceptions:

> [S]he can stand or walk for four hours, and sit for six hours per eight-hour workday; she can alternate between sitting and standing once every thirty minutes for five minutes without increasing time off task; she is limited to occasional pushing and pulling; occasional climbing of ramps and stairs; occasional balancing on level surfaces; occasional stooping (i.e. bending at the waist) and kneeling, but never crouching (i.e. bending at the knees) and crawling; she can never tolerate exposure to unprotected heights, moving machinery and moving mechanical parts; and she should avoid exposure to wetness.

---

[2] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

Tr. 19. Based on this RFC, at step four the ALJ found that Plaintiff is unable to perform her past relevant work as a home health aide and day care worker. Tr. 24. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the impartial VE, the ALJ found Plaintiff would be able to perform such jobs in the national economy as a marker, checker, or garment sorter. Tr. 25. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of DIB or SSI.

On May 31, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner.

## DISCUSSION

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the Secretary, and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

In the present case, Plaintiff maintains that the Commissioner's decision denying her DIB and SSI benefits must be remanded for further administrative proceedings because (1) the ALJ failed to rely on any medical opinion in her RFC finding, and failed to close evidentiary gaps in the record, which errors combine to frustrate meaningful court review; and (2) the ALJ's RFC finding that Plaintiff is capable of performing light work was not supported by substantial evidence. Pl. Mem. of Law, Apr. 10, 2020, ECF No. 14-1.

The ALJ's Treatment of the Medical Opinions in the Record

The only two medical opinions in the record regarding Plaintiff's physical impairments were from consultative medical examiners, each of whom saw Plaintiff for only a single examination. Tr. 23. Samuel Balderman, M.D., examined Plaintiff on September 22, 2014, and Hongbiao Liu, M.D., examined Plaintiff on June 15, 2016.

Tr. 307, 347. After his examination in 2014, Dr. Balderman diagnosed Plaintiff with "status post surgery on both hips," and concluded that Plaintiff had "mild limitation in kneeling and repetitive climbing due to hip pain." Tr. 309. After his examination in 2016, Dr. Liu diagnosed Plaintiff with whole body joint pain and status post hip replacement, and concluded that Plaintiff had "mild to moderate limitation for prolonged walking, bending, and kneeling." Tr. 349. The ALJ granted "little weight" to each of these opinions because the examiners lacked a longitudinal examining relationship with Plaintiff, and their opinions were neither based on the most recent available evidence, nor specific in terms of quantitative functional limitations for the Plaintiff. Tr. 23.

Plaintiff argues that the ALJ's rejection of Dr. Balderman's and Dr. Liu's respective medical opinions created an evidentiary gap in the record, which led the ALJ to improperly use a "lay interpretation of bare medical findings" to formulate Plaintiff's RFC. Pl. Mem. of Law at 15. According to Plaintiff, the absence of additional medical opinion was particularly harmful because, despite the specificity of the RFC determination with respect to Plaintiff's limitations, the record as a whole "does not support that Plaintiff's symptoms would be ameliorated . . . ." Pl. Mem. of Law at 14. Plaintiff maintains that the treating record shows that her degenerative hip and knee conditions were progressive and worsening, and that the ALJ failed to consider later imaging and diagnoses that indicate Plaintiff's inability to work. Pl. Mem. of Law at 15–16.

To begin with, the Court finds no merit in Plaintiff's suggestion that the ALJ's assignment of "little weight" to the only two medical opinions in the record *necessarily* created an evidentiary gap in the record. The ALJ – not a claimant's physician or a consultative examiner – is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546(c), § 416.946(c). "The RFC assessment is a function-by-function assessment based upon *all of the relevant evidence* of an individual's ability to do work-related activities." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996) (emphasis added). Therefore, the ALJ's RFC determination need not perfectly correspond with any one of the opinions of the medical sources cited in his or her decision, so long as he or she has "weigh[ed] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Further, although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013); *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks omitted)). Here, Plaintiff's testimony was in line with the ALJ's RFC determinations: she was able to take care of the tasks of daily living by herself, and

she admitted that "I move around constantly as a single parent." *See, e.g.,* Tr. 45. Moreover, because the ALJ's RFC determination is more restrictive than the limitations suggested in the consultative examiners' opinions, and Plaintiff has failed to adduce any medical opinion inconsistent with the ALJ's determinations, the ALJ was not faced with "any clear gaps in the administrative record" that gave rise to an affirmative obligation to seek a medical opinion. *Cook*, 818 F. App'x at 110 (citing *Rosa*, 168 F.3d at 79-80).

Consequently, the Court finds that the ALJ did not commit legal error in her treatment of the medical opinions in the record, or in her RFC determination.

<u>The Evidence Supporting the ALJ's RFC Finding</u>

Plaintiff argues that the ALJ's RFC finding that she is capable of "light work" pursuant to 20 C.F.R. § 404.1567(b) and § 416.967(b) is not supported by substantial evidence because "the ALJ failed to account for limiting effects in walking, sitting, and standing, and off-task and missed workdays supported by [the] record as a whole." Pl. Mem. of Law at 20. Plaintiff states that she "suffered from progressively degenerative knee and hip conditions where the consultative examiners did not diagnose degenerative conditions; and later imaging tests showed degenerative changes; and there was no treating opinion in the record." Pl. Mem. of Law at 21. She also indicates that the ALJ "failed to sufficiently consider [her] long term management and lifestyle modification," including her testimony that she needed to take frequent rest breaks, used a scooter at times, and needed to lie down daily to

alleviate pain. Pl. Mem. of Law at 22.

As indicated above, provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review of an ALJ's decision is deferential: an ALJ's finding is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The substantial evidence standard means that once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

To determine whether a finding, inference or conclusion is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). Nevertheless, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Here, it is noteworthy that the ALJ found that Plaintiff has the RFC to perform

11

light work only with significant exertional restrictions, and not the full range of light work. As Plaintiff notes, the regulatory definition of "light work" is that it "generally requires 'a good deal of walking or standing.'" Pl. Mem. of Law at 22 (quoting 20 C.F.R. § 404.1567(b)). However, in this case the ALJ's RFC determination restricted the "light work" that Plaintiff could perform by limiting the standing and walking to four hours, the sitting to six hours, and by requiring that she be able to "alternate between sitting and standing once every thirty minutes for five minutes without increasing time off task . . . ." Tr. 19. Bearing these limitations in mind, the Court finds that the ALJ's RFC determination was supported by substantial evidence.

Plaintiff's alleged onset date is September 1, 2013. In September 2014, Dr. Balderman examined Plaintiff and noted, among things, that her gait and stance was normal, she could walk on her heels and toes without difficulty, she needed no help getting on and off the exam table, and she showed no signs of scoliosis. Tr. 308. The treatment record for an orthopedics appointment in November 2015 indicates that Plaintiff's right hip pain had gotten progressively worse, that she had trouble walking and getting on her shoes and socks, and that her symptoms were affecting her daily activities enough that she would like to proceed with a hip replacement. Tr. 327. Plaintiff had her right hip replaced in April 2016, and she reported to her orthopedist in June 2016 that she was doing "fairly well," but that she had developed a problem with her left knee. Tr. 373. At her consultative exam with Dr. Liu a few days later, Plaintiff still had a limp, but she showed no sign of scoliosis and Dr. Liu concluded

12

she had only mild to moderate limitations for prolonged walking, bending, and kneeling. Tr. 349.

In March of 2017, about ten months out from her right total hip replacement, Plaintiff still felt some pain and "crunching" around her right hip, but her main complaint was from her left knee. Tr. 383. Still, Plaintiff walked with a "very nice gait . . . markedly improved from prior to her surgery." Tr. 383. By January 2018, Plaintiff's right hip was no longer a source of complaint, but she noted that she now had left-sided hip pain and her left knee pain was worse. Tr. 370. She reported occasionally using a cane for ambulation at home. Tr. 370.

Nevertheless, in August 2018 Plaintiff testified that she was only taking ibuprofen for inflammation of her knee, she had undergone no physical therapy, and she was helped by a brace for her knee when she was "going to be real active that day." Tr. 41–46. More to the point, Plaintiff testified – as outlined above – that despite the pain, she is able to take care of her tasks of daily living for herself and her eight year-old daughter, including taking her daughter places three to four times each week. Tr. 49. In this context, the Court finds that the ALJ's RFC determination that Plaintiff was able to perform a limited range of light work was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 14] is denied, and the Commissioner's motion

for judgment on the pleadings [ECF No. 17] is granted. The Clerk of Court is directed

to close this case.

DATED:      March 29, 2021
            Rochester, New York


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge

14